```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                   :
UNITED STATES OF AMERICA
                                   :
    v.                             :   Criminal No. DKC 06-00131-003
                                   :
TERRY BARBA
                                   :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion for imposition of a reduced sentence pursuant to Section 404 of the First Step Act of 2018, Pub.L.No. 115-391, § 404, 132 Stat. 5194, 5222 filed by Terry Barba. (ECF No. 825). The Government filed an opposition, (ECF No. 826), and Mr. Barba filed a reply, (ECF No. 827).

Mr. Barba was one of fourteen defendants charged in a multi-count superseding indictment. He was charged in count one with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846. On November 1, 2007, Mr. Barba pleaded guilty pursuant to a plea agreement to the charge in count one, albeit to lesser quantities, namely 500 grams or more of cocaine and 5 grams or more of crack. The plea agreement stipulated that the quantity of cocaine foreseeable to him was at least 3.5 kilograms, but

less than 5 kilograms, and the statement of facts recited that he was involved in a conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine hydrochloride. The penalty section recited that the potential imprisonment ranged from a mandatory minimum of 5 years, to a maximum of 40 years. The plea agreement also stated that the Government would not file a notice of prior convictions, pursuant to 21 U.S.C. § 851, that would have resulted in an enhanced mandatory minimum sentence. The presentence report clearly reflects the understanding that the plea was to conspiracy to distribute 500 grams or more of cocaine and 5 grams or more of crack.

Mr. Barba was sentenced, as a career offender, on February 6, 2008, to 240 months imprisonment, followed by 5 years of supervised release. There have been several post-conviction challenges to the conviction and sentence, and requests for reduction, but none, so far, have been successful. The currently pending motion was filed April 16, 2020.

Mr. Barba seeks a reduction of his sentence to time served.[1] He reports that his current scheduled release date is May 8, 2023. The Government opposes the motion, contending that while he may be eligible he is nonetheless not deserving of a sentence reduction. As will be discussed, Mr. Barba is eligible for

---

[1] The Government contends that a time served sentence amounts to 170 months. Mr. Barba claims that it amounts to a 200-month sentence, after accounting for good-time credit.

consideration under the First Step Act. Eligibility is, however, only the prerequisite; it does not require reduction. Rather, the court has discretion, applying all of the 18 U.S.C. § 3553(a) sentencing factors and assessing post-sentencing conduct, to decide whether and how much to reduce a sentence.

Mr. Barba was sentenced on February 6, 2008, for conduct occurring in March 2006. The Fair Sentencing Act of 2010 was signed into law August 3, 2010. It did not apply to those sentenced before its effective date. The First Step Act was adopted in 2018, and provides that, notwithstanding *Dorsey v. United States,* 567 U.S. 260 (2102), certain persons may seek a retroactively reduced sentence. Section 404(b) provides: "A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." Section 404(a) defines a "covered offense" as a violation of a federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act that was committed before August 3, 2010. There are limitations, however, outlined in Section 404(c):

> No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 or if a previous motion

made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.

Section 2 of the Fair Sentencing Act altered the quantity threshold for the mandatory minimums in 21 U.S.C. § 841, and Section 3 eliminated the mandatory minimum for simple possession. In *United States v. Wirsing*, 943 F.3d 175, 185-86 (4th Cir. 2019), the United States Court of Appeals for the Fourth Circuit concluded that a person is eligible if he was sentenced under 21 U.S.C. § 841(a) and (b)(1)(A)(iii) or (B)(iii). In *United States v. Gravatt*, 953 F.3d 258, 262-64 (4th Cir. 2020), the Fourth Circuit held that a defendant remains eligible under the Act even if the conspiracy for which he was convicted encompassed distribution of both cocaine powder and crack cocaine.

Mr. Barba contends, of course, that he is eligible to seek a reduced sentence. The Government "acknowledges that *Gravatt* is controlling" and that Mr. Barba's motion "is entitled to be considered on the merits."[2] (ECF No. 826, at 7). The Government argues that "although the [c]ourt may be constrained by the *Gravatt* decision from finding [Mr. Barba] ineligible, the

---

[2] The Government "do[es] not concede that [*Gravatt*] was decided correctly[]" and "note[s] [its] objection for purposes of any subsequent appeal in this case or others." (ECF No. 826, at 7).

4

[c]ourt can still deny relief as a matter of discretion." (*Id.*, at 8).

While Mr. Barba is eligible for consideration, whether and how much to reduce a sentence remains within the court's discretion.  Mr. Barba has been incarcerated for over fourteen years.  During that time, he has taken classes, including learning computer skills, developed job skills, obtained a GED, and avoided serious disciplinary infractions.  He is currently housed in a minimum-security camp near his family in New Jersey. He has family support, and a residential plan if released.

The Government points to the seriousness of the offense and his criminal history as counterweights to his conduct since incarceration.  It characterizes the offense conduct as follows:

> Beginning in or about March 2005 and continuing through March 2006, the Petitioner conspired with others to distribute large quantities of drugs to the small community of St. Mary's County.  The level of drugs was colossal in this lightly populated county in comparison to some larger communities such as Baltimore County.  The conspiracy also involved at least 15 defendants.  Petitioner stipulated that at least 3.5 kilograms but less than 5 kilograms of cocaine was attributable to him.  See PSR at ¶¶ 8-13; ECF No. 441 (Sentencing Transcript).

(ECF No. 826, at 9).  Regarding criminal history, the Government reports:

> Petitioner has four previous convictions, three of which were for possession with intent to distribute a controlled dangerous substance ("CDS").  See PSR at ¶¶ 31-49.  Petitioner had his first conviction at age 18 for unlawful possession of a weapon and possession

> with intent to distribute a CDS (Cocaine). PSR at ¶¶ 31-33. On September 26, 1997, the Petitioner was sentenced to 15 years in prison by Superior Court of New Jersey, Essex County for Manslaughter, involving an off-duty correctional officer. PSR at ¶¶ 36-37. On September 12, 1997, the Petitioner was sentenced to 63 months in prison by the United States District Court for the District of New Jersey, for distribution of CDS near a school zone. PSR at ¶¶ 38-49. Furthermore, at the time that the instant offense was committed, the Petitioner was still on probation for the latter offense. PSR at ¶ 51.

(*Id.*). The Government also emphasizes Judge Titus's remarks at sentencing on this troubled history:

> As the Honorable Roger W. Titus clearly expressed at Petitioner's sentencing, "[t]his is a defendant who in spite of repeated brushes with the law has simply never learned his lesson. He has been given breaks. He has been given supervised release that he's violated. And he has shown very little respect for the law." Judge Titus concluded that in light of the seriousness of the offense, Petitioner's criminal history and the substantial need to protect the public, a sentence of 240 months was appropriate. *See* ECF 441 at 10-11.

(*Id.*, at 10). The parties dispute both how the guidelines would be calculated today, and whether any other changes in the law should be recognized, such as that conspiracy to distribute controlled substances no longer qualifies for career offender status. It is not necessary to resolve those disputes, however, because the reduction sought here is appropriate even if the career offender designation is appropriate, and the guidelines remain unchanged. Mr. Barba received the longest sentence of the many defendants involved in this conspiracy, arguably

6

despite not being the most involved. At the initial sentencing, the Government sought a sentence of at least 215 months. A reduction of three years in real time equates, as Mr. Barba suggests, to a reduction of approximately 40 months in the imposed length. He will still have served the longest sentence of any of his co-defendants (or equally as long as one). He has conducted himself admirably while in custody, earning placement in a camp and recommendation for the longest possible time in home confinement. His letter to the court reflects maturity and hope, and the letters from supporters augur well for the success of his re-entry.

Because of the COVID-19 crisis, Mr. Barba requests immediate release, rather than any transition time, or period of quarantine. He proposes being permitted to leave to live with his daughter while he self-quarantines there before transitioning to live with his father. Because he proposes to live in New Jersey, the probation office in that jurisdiction must be consulted and will need to accept responsibility for supervision and approve the plan. Until the court hears whether that has happened, immediate release will not be ordered. At an appropriate time, a separate order and an amended judgment will be entered.

                                                    /s/
                                 DEBORAH K. CHASANOW
                                 United States District Judge